MICHAEL M. VASSEGHI (SBN 210737)
michael.vasseghi@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone: (310) 966-8400
Facsimile: (310) 966-8810

Attorneys for Plaintiffs
The Wonderful Company LLC
and Cal Pure Produce Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| THE WONDERFUL COMPANY LLC, a Delaware Limited Liability Company; CAL PURE PRODUCE INC. a California Nonprofit Cooperative Association,<br><br>　　　　　Plaintiffs,<br>　vs.<br>OWN YOUR HUNGER INC., and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants. | Case No.<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT; AND DEMAND FOR TRIAL BY JURY** |

Plaintiffs hereby alleges as follows:

## **PARTIES**

1.　Plaintiff The Wonderful Company LLC ("TWC") is the owner of the well-known WONDERFUL® trademark.

2.　Plaintiff Cal Pure Produce Inc. is a California nonprofit cooperative association which markets and sells the WONDERFUL brand of pistachio nuts. Cal Pure Produce Inc. is also a licensee of the intellectual property that is the subject of this dispute. TWC and Cal Pure Produce Inc. will collectively be referred to as Plaintiffs.

3.      Defendant OWN Your Hunger Inc. ("Own") is a Canadian corporation, with a place of business in Calgary, Alberta, Canada.

4.      Plaintiffs are not aware of the true names and capacities of the Defendants identified herein as Does 1 through 10, inclusive, and therefore fictitiously name said Defendants. Plaintiffs will amend this Complaint to allege the true names and capacities of these fictitiously named Defendants when their identities are ascertained.

5.      Plaintiffs are informed and believe, and based thereon allege, that Own and each of the fictitiously named Doe Defendants (collectively, "Defendants") were in some manner responsible for the acts alleged herein and the harm, losses and damages suffered by Plaintiffs as alleged hereinafter.

6.      Plaintiffs are also informed and believe, and based thereon allege, that while participating in such acts, each Defendant was the agent, principal, and/or alter ego of the other Defendants, and was acting in the course and scope of such agency and/or acted with the permission, consent, authorization, or ratification of the other Defendants.

## JURISDICTION AND VENUE

7.      This action arises, in part, under the Lanham Act, as amended. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 (federal question), and 15 U.S.C. Section 1051, *et seq.* (trademark infringement under the Lanham Act).

8.      Own, with its principal place of business located at 4412 17 Ave NW, Calgary, Alberta, Canada T3B 0N8 engages in the packaging and distribution of nut butter and nut-based products, using the WONDERSPREAD and WONDERSQUARE marks on its products packaging.

9.      Plaintiffs are informed and believe, and based thereon allege, that venue is proper in this District pursuant to 28 U.S.C. Sections 1391(b) and 1391(c) because a substantial part of the events and harm giving rise to the claims occurred

in this District.  Additionally, Plaintiffs are informed and believe, and based thereon allege, that the Court has personal jurisdiction over Defendants because Defendants conduct ordinary business activities in this District, have focused a substantial portion of their unlawful conduct within this District, and generally engage in business in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

10. TWC is based in Los Angeles, California. With billions of dollars in revenue a year, TWC currently counts as business divisions the following well known food and beverage brands: juice company POM Wonderful, bottled water company FIJI Water, Wonderful Pistachios & Almonds, Wonderful Halos, Wonderful Seedless Lemons, JUSTIN Vineyards and Winery, Lewis Cellars (winery), Landmark Vineyards and Winery, JNSQ Wines, and flower delivery service Teleflora.

11. Wonderful Pistachios & Almonds is the world's largest vertically integrated pistachio and almond grower and processor, cultivating and harvesting more than 65,000 acres of pistachio and almond orchards and delivering more than 450 million pounds of nuts globally each year.

12. The WONDERFUL pistachio nuts are premium quality and are brought to consumers using the highest quality standards in the industry.

13. WONDERFUL pistachios have been on the market since 2009 and can be purchased through retailers like Whole Foods, Amazon, Walmart, and Target, to name a few.

14. Each package of Plaintiffs' products contains the trademark that looks substantially like this:



15. In a blatant attempt to trade off the reputation and goodwill of Plaintiffs, Defendants sell nut butters using the WONDERSPREAD mark on their packaging. Defendants also sell a nut based bar under the WONDERSQUARE mark. WONDERSPREAD and WONDERSQUARE will collectively be referred to as the "WONDER-based Marks". The WONDER-based Marks look substantially like this:



16. The WONDESPREAD mark is on packaging for spreadable peanut butter and hazelnut butter products. The WONDERSQUARE mark is on a nut-based bar that is square shaped.

17. TWC has two registered trademarks for the standard character WONDERFUL mark - Reg. Nos. 4897336 and 3907814 - the latter for fresh, raw or unprocessed nuts and the former for flavored, salted, roasted or processed nuts. TWC also has a separate registration - Reg. No. 3784763 - which depicts the mark with the heart in place of the "O" as shown in paragraph 14 above. The '336, '763 and '814 trademark registrations will collectively be referred to as the WONDERFUL Marks and the '763 registration will be referred to as the WONDERFUL Mark (singular).

18. The WONDERFUL Marks are valid, subsisting, and have incontestable status under the Lanham Act, 15 U.S.C. § 1115. A copy of the Certificate of Registration and printouts from the United States Patent and Trademark Office's online records for the WONDERFUL Marks are attached hereto as Exhibit A.

19. Accordingly, pursuant to 15 U.S.C. Section 1115, Reg. Nos. '336, '763 and '814 serve as conclusive evidence of, *inter alia*, the validity of the trademarks

depicted therein, and of TWC's ownership of and exclusive right to use these marks depicted therein in commerce in connection with nuts.

### TWC's Sales and Marketing of WONDERFUL Branded Nuts

20. TWC has spent vast sums of money to promote the WONDERFUL Marks. For example, commencing in September 2009, TWC embarked on a highly-publicized series of nationwide television commercials on major television networks such as NBC, CBS, ABC, FOX, A&E, Biography, Comedy Central, Discovery, Discovery Science, E!, Food Network, FX, HGTV, IFC, National Geographic, SYFY, TBS, TLC, TNT and ESPN for its WONDERFUL® brand of pistachios. These commercials have been shown in prime-time slots during highly popular television shows as well during numerous Super Bowls.

21. Over the years TWC has produced dozens of these television commercials, some featuring well-known and varied personalities, such as rapper Snoop Dogg, boxer Manny Pacquiao, talk show host Stephen Colbert, the Kardashians, comedian Lewis Black, former Chicago Bulls basketball star Dennis Rodman, and characters such as Kermit the Frog, Homer Simpson, Miss Piggy, and the Grinch.

22. In each and every one of these commercials for pistachios, the WONDERFUL Mark is prominently featured at the end, and in some instances during the commercial as well, so that consumers become familiar with the WONDERFUL Mark and brand.

23. TWC has also advertised its WONDERFUL pistachio nuts in myriad other ways including online via ad banners, social media, print media such as coupons, billboards, in-store point of sale promotions, and via product placements. In all of these advertisements, the WONDERFUL Mark is incorporated into the advertisement.

24. TWC has also spent more than half a billion dollars over the past 13 years on various forms of advertisements highlighting the WONDERFUL Marks.

25. WONDERFUL pistachios are the best-selling snack nut in the United States by revenue. Plaintiffs have sold more than one billion packages of pistachios with the WONDERFUL Marks in the last fifteen years, translating into over $4.2 billion worth of retail sales.

26. Moreover, numerous articles have been written about WONDERFUL pistachio nuts. These articles were unsolicited and driven by the extensive manner in which TWC has advertised its pistachios. Such articles have appeared in periodicals such as USA Today, Women's Health, E! News, New York Magazine, and Prevention Magazine.

27. Nuts and snacks are considered a "fast moving" consumer good and because of their wide distribution and relatively low cost, consumers are likely to purchase them quickly, on impulse. It is for this reason that TWC has spent such a considerable sum of money promoting the high quality WONDERFUL brand.

28. Plaintiffs, their authorized distributors, and their distributors' customers, have continuously and exclusively used the WONDERFUL Marks to distinguish themselves from their competitors.

29. WONDERFUL pistachios are sold nationwide, in all fifty states, as well as in other countries. The product is available for sale on online retailers such as Amazon as well as brick and mortar stores like Walmart, Target, Costco and many other major retailers, as well as on their respective online stores.

30. Plaintiffs have been careful, skilful, and diligent in conducting their pistachio business and maintaining uniform standards of high quality for their WONDERFUL pistachios. As a result of these efforts, the WONDERFUL Marks have acquired a public acceptance and reputation, thereby creating a valuable public goodwill that inures to Plaintiffs' benefit.

**The USPTO's Refusal To Register WONDERSPREAD as a Trademark**

31. In July 2021 Own applied to obtain a trademark registration for the WONDERSPREAD mark with the United States Patent and Trademark Office.

TWC opposed the application contending that WONDERSPREAD created a likelihood of confusion with WONDERFUL given that 1) both marks began with "WONDER" creating a similar commercial impression, 2) the competing marks were used on similar goods - nuts and nut-based products, 3) the competing products were offered for sale in the same trade channels, 4) the competing products were low cost items and were therefore impulse purchases, and 5) the WONDERFUL trademark was a strong mark, affording it a wide scope of protection.

32. On September 24, 2024, the Trademark Trial and Appeal Board of the USPTO (TTAB) issued its Final Decision sustaining TWC's opposition to Own's application and refused to register WONDERSPREAD as a trademark on the grounds that consumers would likely confuse the applied-for WONDERSPREAD mark with Plaintiffs' registered WONDERFUL trademark.

33. With respect to the similarity of the marks, the TTAB held that the "parties' marks are more similar than dissimilar in appearance." It considered "'WONDER' to be the dominant element in both parties' marks because it is most likely to be impressed upon the mind of a purchaser and remembered."

34. The TTAB also found that the "parties' goods are related" and therefore similar.

35. Next, the TTAB found "that the trade channels and classes of consumers for the parties' respective goods overlap" and that the "standard of care for purchasing the goods at issue here is that of the least sophisticated potential purchaser."

36. With respect to the strength of the WONDERFUL Marks, the TTAB held that it "is widely used and recognized, and we therefore find [WONDERFUL] commercially strong, having achieved widespread consumer exposure."

37. Finally the TTAB considered and rejected Own's arguments that WONDERFUL was a weak mark because it is "'diluted and blurred' due to its widespread use in various food categories." A copy of the TTAB's Final Decision

is attached hereto as Exhibit B.

**Own's Conduct After the TTAB Decision**

38. After the TTAB's Final Decision, TWC's counsel wrote to Own's counsel requesting Own to rebrand its WONDERSPREAD and WONDERSQUARE products. Thereafter the respective parties' counsel spoke on the phone during which TWC's counsel again reiterated TWC wanting Own to rebrand because WONDERSPREAD was confusingly similar to WONDERFUL.

39. On October 7, 2024, Own's counsel wrote to TWC's counsel: "I consulted with OWN Your Hunger's owner, and he is willing to rebrand the product. He requests 60 days to develop mock-ups of the revised product packaging for your review." Plaintiffs waited patiently for mock-ups of Own's rebranded products for two months.

40. On December 6, 2024, Own's owner, Ruz Safai, sent a letter through Own's U.S. counsel to TWC's counsel. Instead of removing WONDERSPREAD from the packaging, Own's proposed "rebrand" was to move the WONDERSPREAD mark to a lower section on its packaging.

41. Mr. Safai's December 6th letter specifically stated that "this letter is not an offer for settlement nor a negotiation, it is not subject to FRE 408, and may be used as evidence if necessary in an potential form of litigation." A copy of this letter is attached hereto as Exhibit C.

42. Own's explanation was that because the WONDERSPREAD mark had "been repositioned as part of the product description" it was somehow no longer infringing.

43. On December 16, 2024, TWC's counsel wrote to Mr. Safai, setting out the proper analysis for trademark infringement and why TWC believed the WONDER-based Marks were infringing. Specifically TWC noted that the repositioning did not change the fact that the infringing WONDERSPREAD mark was still being used, and that Own's position that it was somehow a product

8

descriptor was legally untenable. A copy of this letter is attached hereto as Exhibit D.

44. On January 6, 2024, Mr. Safai once again wrote back to TWC's counsel, indicating that he refused to remove the WONDER-based Marks from Own's products. A copy of this letter is attached hereto as Exhibit E.

## Factors Causing Likelihood of Confusion

45. Given the amount of advertising, marketing and resulting sales the WONDERFUL Marks are commercially strong.

46. Own's products, on the one hand are nut butters and nut based snacks, while Plaintiffs' product is nuts. Since the parties' competing products are either nuts or contain nuts, the goods at issue are similar.

47. WONDERFUL, WONDERSPREAD and WONDERSQUARE all create the same commercial impression since they all begin with "WONDER" which is the first, and therefore the most dominant portion of each of these marks, creating a high likelihood of consumer confusion.

48. Plaintiffs' and Own's products are both sold on Amazon.com. Therefore they are sold in overlapping trade channels. Own's product are marketed online. Plaintiffs' products are also marketed online, therefore the goods use the same marketing channels to reach consumers.

49. Own's WONDERSPREAD product is an "Amazon's Choice" product with over 690 customer reviews on Amazon.com. According to Amazon.com, the volume of sale for this product is high with: "1K bought in past month."

50. WONDERFUL pistachios range between $1 and $23 in price depending on package size and geographic location of the sale. Own's WONDERSPREAD product retails for about $15 and the WONDERSQUARE product retails for about $30. These are low cost products and as such consumers make these impulse purchases quickly with a low degree of care.

**Own's Intentional Infringement**

51. Own did not originally have WONDERSPREAD anywhere on its peanut butter product (product on left below). At some point in time it added WONDERSPREAD to its packaging (product on right below). Therefore Own went out of its way to intentionally change its packaging to incorporate a confusingly similar trademark to its product, when it had no reason to, except to cause consumer confusion.

 

52. This intentional addition also undermines Own's claim that it is using WONDERSPREAD as a "product descriptor" since apparently no such "descriptor" was previously necessary to describe its product.

53. Furthermore, Own has incorporated a design element into the "O" of WONDERSPREAD and WONDERSQUARE, much like TWC has incorporated the heart design in the "O" for WONDERFUL. WONDERSQUARE and WONDERSPREAD each consist of twelve letters, any one of which could have been altered with a design. Despite this choice, Own chose the letter "O" for its design incorporation just like TWC had done years earlier for its WONDERFUL Mark. This is further evidence of Own trying to sow consumer confusion through subtle mimicry of Plaintiffs' WONDERFUL Mark.

54. Given consumers' recognition of the WONDERFUL Marks, Own's intentional acts are an attempt to get consumers to mistakenly believe that OWN's products are related to, or somehow affiliated with, Plaintiffs and their WONDERFUL nuts.

## COUNT ONE

## TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN PURSUANT TO 15 U.S.C. § 1125(A)

55. Plaintiffs incorporate Paragraphs 1 through 54 above as though set forth fully herein.

56. Plaintiffs have used the WONDERFUL Marks in interstate and foreign commerce in connection with the sale and marketing of their pistachios and almonds.

57. Defendants' WONDER-based Marks on products is infringing, and Defendants are falsely designating the origin of their products, because these marks use the dominant portion of the WONDERFUL Marks.

58. Defendants' use of the WONDER-based Marks have confused the public, and are likely to continue to cause confusion or to cause mistake, or to deceive the consuming public into believing that Defendants' products are authorized, sponsored or approved by or are affiliated with Plaintiffs or are connected to the WONDERFUL brand of nuts.

59. These acts constitute trademark infringement of the WONDERFUL Marks, and false designation of origin in violation of 15 U.S.C. Section 1125(a), entitling Plaintiffs to relief.

60. Plaintiffs are, and will continue to be, irreparably harmed if Defendants are not enjoined. Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted, and Plaintiffs are therefore entitled to entry of injunctive relief pursuant to 15 U.S.C. Section 1116.

61. Defendants have caused Plaintiffs to suffer monetary damages in an

amount to be proven at trial.

62. Plaintiffs are further entitled to recover Defendants' profits attributable to the infringement.

63. Plaintiffs are entitled to an award of their attorneys' fees pursuant to 15 U.S.C. Section 1117 because this is an exceptional case.

## COUNT TWO

## TRADEMARK INFRINGEMENT PURSUANT TO 15 U.S.C. SECTION 1114(A)

64. Plaintiffs incorporate by reference Paragraphs 1 through 63 above as though fully set forth herein.

65. Defendants' actions, described above, constitute unauthorized use in commerce of a registered mark in connection with the sale and advertising of goods and such use is likely to cause confusion or to cause mistake or to deceive as to the origin of the goods sold by Defendants.

66. Defendants' wrongful actions violate 15 U.S.C. Section 1114(a).

67. Plaintiffs are, and will continue to be, irreparably harmed if Defendants are not enjoined from their infringing acts. Plaintiffs' remedy at law is not adequate to compensate them for the injuries inflicted, and Plaintiffs are therefore entitled to entry of injunctive relief pursuant to 15 U.S.C. Section 1116.

68. Defendants' actions have caused Plaintiffs to suffer monetary damages in an amount to be proven at trial.

69. Plaintiffs are further entitled to an award of Defendants' profits attributable to the infringement.

70. Plaintiffs are entitled to an award of their attorneys' fees pursuant to 15 U.S.C. Section 1117 because this is an exceptional case.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court award Plaintiffs the following relief:

A. That the Court render a final judgment in favor of Plaintiffs and against Defendants on all claims for relief alleged herein;

B. That the Court render a final judgment declaring that Defendants have, by their unauthorized use of Plaintiffs' WONDERFUL Marks, used and applied false designations of origin in violation of Federal Law and have done so willfully all to the detriment of Plaintiffs;

C. That Defendants, their agents, servants, employees, successors and assigns and all persons in active concert, privity, or participation with Defendants, be preliminarily and permanently enjoined from using Plaintiffs' WONDERFUL Marks, from infringing upon Plaintiffs' WONDERFUL Marks, from using any false designation or false description or representation, from engaging in any act or series of acts which either alone or in combination constitutes deceptive or unfair methods of competition by Defendants with Plaintiffs, from causing a likelihood of confusion or injury to Plaintiffs' business reputation, and from otherwise interfering with or injuring the business reputation of Plaintiffs;

D. That Defendants be required to account for and pay over to Plaintiffs, Defendants' profits and any damages suffered by Plaintiffs as a result of Defendants' acts of trademark infringement, false designation of origin together with interest and costs;

E. That Defendants be required to pay to Plaintiffs an amount three times the profits of Defendants or damages of Plaintiffs;

F. That Defendants be ordered to surrender for destruction all signs, labels, advertisements and other materials constituting infringement of Plaintiffs' WONDERFUL Marks;

G. That Defendants be required to pay Plaintiffs the costs of this action, together with reasonable attorneys' fees, costs and disbursements; and

H. That Plaintiffs be awarded such other and further relief as this Court deems just and equitable.

DATED: February 5, 2025        Respectfully submitted,

By: _____/s/ Michael M. Vasseghi_____
Michael M. Vasseghi for
Plaintiffs The Wonderful Company LLC
and Cal Pure Produce Inc.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial in connection with this action.

DATED:  February 5, 2025           Respectfully submitted,


By:      /s/ Michael M. Vasseghi
Michael M. Vasseghi for
Plaintiffs The Wonderful Company LLC
and Cal Pure Produce Inc.